UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DRAGOS IULIAN NITA<br>　　Petitioner<br><br>V.<br><br>SHERLY DEL CARMEN VILLA TOVAR<br>　　Respondent | §<br>§<br>§<br>§<br>§<br>§<br>§ CIV. ACTION NO. _____<br>§<br>§<br>§<br>§<br>§ |

### VERIFIED PETITION FOR RETURN OF CHILD TO SPAIN AND ISSUANCE OF SHOW CAUSE ORDER

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001 *et seq*.**

1. This Verified Petition for Return (the "Petition") is filed as a result of the wrongful retention of the 16-month-old child, RGVN born in 2020 (the "child"), in the United States from his habitual residence of Spain. The wrongful retention began on or about July 6, 2021.

2. The Petitioner, Dragos Iulian Nita, is the child's father. Petitioner is a Romanian national and resident of Spain.

3. Respondent, Sherly Del Carmen Villa Tovar, is the child's mother. Respondent is a Spanish national, born in Cuba and currently living in the United States.

4. This Petition is brought pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980[1] (hereinafter the "Hague Convention" or "Convention") and the International Child Abduction Remedies Act (hereinafter "ICARA").[2]

---

[1] T.I.A.S. No. 11, 670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986).
[2] 22 U.S.C. 9001 *et seq.*

5. The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Spain on July 1, 1988.[3]

6. The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and access under the law of one Contracting State are effectively respected in the other Contracting States. Convention, art. 1.

## JURISDICTION

7. This Court has Jurisdiction under ICARA § 9003 because this case involves the wrongful retention of a child under the age of 16 in the United States from his habitual residence in Spain.

8. On information and belief, the child is currently located with his mother within the jurisdiction of this Court in the Southern District of Texas. The child's last known address is 2051 Round Spring Drive, Kingwood, TX 77357.

## FACTS

9. Petitioner and Respondent are the parents of RGVN, their son, who was born in Morella, Castellón, Spain, on September 30, 2020. RGVN is thus a citizen of Spain.

10. Petitioner and Respondent have never been married. Prior to their son's birth, Petitioner and Respondent lived in the same household together for two years, up until Respondent left Spain with RGVN under false pretenses and wrongfully retained him thereafter. Petitioner and Respondent also lived with Respondent's child from a previous relationship, DVA; Petitioner is not DVA's father.

11. On July 6, 2021, Respondent flew from Madrid, Spain to the Houston, Texas with RGVN and DVA, under the pretense that she was visiting family and was going to start the procedure for

---

[3] *See* Hague Abduction Convention Country List, text available at: https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html (last accessed March 15, 2022).

a K-1 Visa[4] so that the couple could get married and offer their children greater opportunities. The Parties agreed that Respondent would return to Spain on September 7, 2021.

12. Petitioner executed a Power of Attorney on June 29, 2021, for the limited purpose of allowing the Respondent to fly to the United States and back to Spain.

13. Once Respondent arrived in the United States, she would not let Petitioner see or speak to the children and for a period of two months, Respondent blocked every method that Petitioner and his family had to contact her.

14. As a result, on July 14, 2020, Petitioner revoked the Power of Attorney. On July 19, 2021, Petitioner informed Respondent via WhatsApp[5] that he had revoked the Power of Attorney.

15. Petitioner soon discovered that Respondent was not visiting family but instead was residing at 2051 Round Spring Drive, Kingwood, TX 77357, at a residence owned by Jaime Cuervo Toledano. Near the beginning of August, 2021, Petitioner was contacted by Mr. Toledano, who stated that he was the one who had sent Respondent the money for her flight and for the preparation of the Power of Attorney that Petitioner executed. Respondent had previously told Petitioner that she received the money for the flight from her father, who she stated resides in Texas. Upon further investigation, Petitioner uncovered that, in the course of a month preceding Respondent's departure, she had received around €3600.00 from Mr. Toledano.

16. Petitioner thus filed a complaint at the local police department in Morella, Castellon, Spain. Respondent, after being contacted by Spanish authorities, agreed to unblock Petitioner, and the

---

[4] A K-1 visa permits a foreign-citizen fiancé to travel to the United States and marry his or her U.S. citizen sponsor within 90 days of arrival. *See* Nonimmigrant Visa for a Fianc(é)e (K-1), available at https://travel.state.gov/content/travel/en/us-visas/immigrate/family-immigration/nonimmigrant-visa-for-a-fiance-k-1.html (last accessed March 15, 2022).
[5] WhatsApp is an internationally available cross-platform instant messaging and voice service, which allows users to send text and voice messages, make voice and video calls, and share images, documents, user locations, and other content. *See WhatsApp*, WIKIPEDIA, available at https://en.wikipedia.org/wiki/WhatsApp (last accessed March 15, 2022).

Parties again agreed that Respondent would return to Spain with the children on September 7, 2021, as previously agreed. However, Petitioner soon cut off contact again on September 9, 2021.

17. On October 2, 2021, Petitioner submitted his Hague Convention Application to the Spanish Central Authority. The Application was transmitted to the United States Central Authority, which is the United States Department of State Office of Children's Issues.

18. A few days prior, Respondent had unblocked Petitioner. Petitioner informed Respondent that Respondent and the children were illegal immigrants in the United States, as Respondent was travelling pursuant to the Visa Waiver Program, which only allows stays for 90 days or less. Respondent simply replied that there were millions like them that were not being deported.

19. Sometime in January, 2022, Respondent again reinitiated contact with Petitioner, informing him that she was pregnant with another child and manifesting an intent to voluntarily return the child to Petitioner. However, Respondent soon cut off all contact once again.

20. Petitioner's most recent information on the status of his son came via Respondent's brother, Rodolfo Tovar, who informed him that Respondent mentioned that she may try to move somewhere around Montana. Petitioner has not received any additional information regarding Respondent's move and is unaware whether Respondent is actually moving.

## COUNT 1 – WRONGFUL RETENTION

21. Petitioner restates and re-alleges the allegations contained in Paragraphs 1 through 20 as if fully set forth herein.

22. The Hague Convention applies to cases in which a child under the age of sixteen (16) years has been removed or retained from his or her habitual residence in breach of rights of custody of a petitioner, which the petitioner had been exercising at the time of the wrongful removal or wrongful retention of the child.

23. The child is under the age of 16.

24. The habitual residence of the child is Spain and was Spain on the date Respondent removed the child from Spain and thereafter wrongfully retained the child in the United States.

25. From the totality of the circumstances perspective as of the date of retention on July 6, 2021, Spain is the child's home. The now 17-month-old child has exclusively lived in Spain prior to his wrongful removal.

26. Respondent does not have immigration status that allows her to live in the United States.

27. Spain is the child's ordinary home and holds a degree of settled purpose from the child's perspective. The child is fully involved and integrated in all aspects of daily and cultural life in Spain. The child receives routine medical care in Spain.

28. Article 158 of the Spanish Civil Code provides that a Judge, ex officio or at the request of the child, or of any relative shall order necessary measures to prevent the abduction of underage children by one of the parents.

29. On October 27, 2021, Petitioner came to be heard by Judge Isabel Maria Gallego Garcia of the Court of First Instance No. 5 Vinaros; Judge Garcia entered an Order declaring that the retention of RGVN in Houston by Respondent was unlawful within the meaning of Article 3 of the October 26, 1980 Hague Convention on the Civil Aspects of International Child Abduction

30. Notice is given in this pleading that Petitioner is relying upon foreign law. FED. R. CIV. P. 44.1.

## COUNT II – ARTICLE 18 RETURN

31. Petitioner restates and re-alleges the allegations contained in Paragraphs 1 through 30 as if set forth fully herein.

32. Petitioner invokes Article 18 of the Convention, which grants this Court plenary power to order the child's return at any time.

**PROVISIONAL AND EMERGENCY REMEDIES**

33. Petitioner requests that the Court issue a Show Cause Order forthwith ordering the appearance of Respondent and the child before this Court on the first available date on the Court's calendar, and directing the United States Marshal Service to serve the Show Cause Order on Respondent forthwith, and immediately take into safe-keeping any passports, identity cards, visas, and other travel documents for the minor child in her respective possession, custody, or control.

34. Unless this Court takes expedited action to issue the initial order requested by Petitioner, irreparable harm will occur to the well-being of the child in that he will continue to be deprived of his father and his home and could potentially be taken into government custody with his mother, due to their unauthorized presence in the United States.

35. Service of the Show Cause Order and pleading by the United States Marshal Service is necessary in this case to ensure that Respondent accepts service and does not flee from this Court's jurisdiction with the child.

36. Pursuant to ICARA § 9004, in a proceeding for the return of a child, "[n]o court exercising jurisdiction . . . may . . . order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004. In this case, the law referred to is that of Texas.

37. In Texas, the Uniform Child Custody Jurisdiction and Enforcement Act ("CCJEA") is the source for statutory law governing, *inter alia*, the resolution of international child custody disputes and is codified as Chapter 152 of the Texas Family Code.

38. Texas law addresses the appearance of the parties and the child in such cases in § 152.210 of the UCCJEA. That section authorizes this Court to order the appearance of the child and

custodian and authorizes this Court to "enter any orders necessary to ensure the safety of the child . . ." *Id.* at § 152.210(c).

39. Petitioner further requests that he be excused from personally attending the Initial Show Cause and Scheduling Hearing, as long as his counsel appear on his behalf, in light of the Petitioner's lack of any United States immigration status,[6] and in light of the COVID-19 pandemic. Petitioner is available to appear by electronic means, as necessary.

## UCCJEA DECLARATION

40. The details regarding the child that are required to be provided under the UCCJEA are as follows:

   a. Based on the child's last known address, upon information and belief, the child is currently located with Respondent at 2051 Round Spring Drive, Kingwood, TX 77357 (Montgomery County).

   b. Upon information and belief, the child has been located at the address stated above since on or about July 6, 2021.

   c. Prior to the child's wrongful removal, the child has always resided with Petitioner and Respondent in Spain.

   d. Petitioner does not have information of any custody proceeding concerning the child pending in any other court of this or any other State, except as set forth in this Verified Petition.

   e. Petitioner does not know of any person or institution not a party to the proceedings that has physical custody of the child or claims to have rights of parental responsibility or

---

[6] As Petitioner is a Romanian, rather than a Spanish, national, he is unable to travel to the United States under the Visa Waiver Program, as respondent was able to.

legal custody or physical custody of, or visitation or parenting time with the child, other than the information provided in this Verified Petition.

## NOTICE OF HEARING

41. Pursuant to 22 U.S.C. 9003(c), the parties will be given notice of any hearing in accordance with Texas's UCCJEA, found in Texas Family Code Chapter 152.

## ATTORNEY'S FEES AND COSTS INCLUDING TRANSPORTATION EXPENSES PURSUANT TO CONVENTION ARTICLE 26 AND ICARA § 9007

42. Petitioner is represented by *pro bono* counsel and has not therefore incurred any attorneys' fees in this matter. But Petitioner has incurred and will continue to incur reasonable and necessary expenses and costs as a result of Respondent's wrongful retention of the child.

43. Petitioner respectfully requests that this Court award Petitioner all reasonable and necessary expenses and costs incurred in accordance with ICARA § 9007, upon the filing of a separate motion for reasonable and necessary expenses and costs in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules. Petitioner is not seeking an award of his *pro bono* fees.

## RELIEF REQUESTED

44. **WHEREFORE**, Petitioner, Dragos Iulian Nita, respectfully requests the following relief:

   a. This Verified Petition for Return of Child be granted;

   b. This Court issue a Show Cause Order in the form submitted herewith scheduling an initial show cause and scheduling hearing on the first available date on the Court's calendar;

   c. This Court's Show Cause Order be served upon the Respondent forthwith by the United States Marshal Service;

d. That this Court grant any such further relief as justice and the Petitioner's cause may require.

## VERIFICATION

I, Dragos Iulian Nita, do solemnly declare and affirm under the penalties of perjury under the laws of the United States of America that the factual averments in the foregoing Verified Petition are true and correct to the best of my knowledge, information, and belief.

_____
Dragos Iulian Nita
*Petitioner*

Respectfully submitted,

**PHELPS DUNBAR LLP**

*/s/ Sebastien J. Jongbloets*
Sebastien J. Jongbloets
Federal Bar No. 3727856
Texas Bar No. 24125920
sebastien.jongbloets@phelps.com
Nicole M. Hilburn
Federal Bar No. 685166
Texas Bar No. 24055663
nicole.hilburn@phelps.com
910 Louisiana Street, Suite 4300
Houston, Texas 77002
Telephone: (713) 626-1386
Telecopier: (713) 626-1388

**ATTORNEYS FOR PETITIONER,
DRAGOS IULIAN NITA**